UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MANUEL ANGEL CORDOVA ROSADO,

       Plaintiff,

v.                                                         Case No.  8:20-cv-1893-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

       Defendant.
_____/

## **ORDER**

       Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## **I.  Procedural Background**

       Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 57).  The Commissioner denied Plaintiff's claims (Tr. 79).  Plaintiff then requested an administrative hearing (Tr. 87).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 27–52).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

claims for benefits (Tr. 11–21).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1964, claimed disability beginning June 14, 2018 (Tr. 57).  Plaintiff completed his GED (Tr. 45).  Plaintiff's past relevant work experience included work as a corporate driver, a de-icer of airplanes, a federal security officer, and a staff supervisor (Tr. 45).  Plaintiff alleged disability due to diabetes, left knee arthritis, left shoulder arthritis, hypothyroidism, high blood pressure, and retinal hole (Tr. 58).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2022 and had not engaged in substantial gainful activity since June 14, 2018, the alleged onset date (Tr. 13).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: status post left knee and left shoulder surgery, left shoulder adhesive capsulitis, later onset cervical and lumbar herniations, left knee meniscal tear, left knee chondromalacia in patella, and medical compartment (Tr. 13).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can occasionally lift and/or carry

up to twenty pounds and frequently lift and/or carry up to ten pounds.  He can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday and he can sit, with normal breaks, for six to eight hours during an eight-hour workday.  He is limited to occasional overhead reaching with non-dominant left arm, occasional climbing, balancing, stooping, kneeling, crouching or crawling, and he would have to avoid working at unprotected heights or with hazardous machinery (Tr. 14).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 15).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 18).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a routing clerk, mail clerk, and housekeeping cleaner (Tr. 20).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues here that the ALJ erred by (1) failing to properly evaluate whether Plaintiff needs to use a cane; (2) failing to properly consider Plaintiff's subjective

complaints; and (3) failing to properly consider Plaintiff's borderline age category.  For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.   Use of Cane

First, Plaintiff contends the ALJ failed to properly evaluate his medical need for a hand-held assistive device when determining his RFC[2] (Doc. 28, p. 14).  Specifically, Plaintiff claims the ALJ erred by failing to include his need for a cane in contravention of Social Security Ruling ("SSR") 96-9p, which provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  This ruling provides that the use of a hand-held assistive device can erode the occupational base for sedentary work.  *Id.* "Under SSR 96-9p, a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed."  *Charity v. Comm'r of Soc. Sec.*, No. 6:19-cv-1075-Orl-EJK, 2020 WL 5797623, at *3 (M.D. Fla. Sept. 29, 2020) (citation omitted).  Of course, absent such a showing, the

---

[2] The RFC is defined as the most a claimant can do despite his limitations.  20 C.F.R. § 416.945(a)(1).  To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. § 416.945(a)(1), (3).

ALJ is not required to include the use of an assistive device in the RFC or hypothetical to the vocational expert. *Id.* Courts have held that a prescription or lack of a prescription for an assistive device is not necessarily dispositive of medical necessity. *See Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-18PRL, 2018 WL 4126528, *3 (M.D. Fla. July 9, 2018), *report and recommendation adopted*, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018). "When the record reflects a purported need for a hand-held assistive device, but the ALJ fails to affirmatively reject the need for such a device, the Court cannot be certain whether the ALJ intended to recognize it." *Williams v. Acting Comm'r of Soc. Sec.*, No. 3:18-cv-764-J-MCR, 2019 WL 2511592, at *4 (M.D. Fla. June 18, 2019) (citing *Drawdy v. Astrue,* No. 3:08-cv-209-J-HTS, 2008 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008)). On the other hand, where an ALJ affirmatively rejects the need for a cane and gives reasons for doing so based on substantial evidence, the ALJ has performed the necessary analysis. *Wright v. Colvin*, No. CV 313–079, 2014 WL 5591058, at *5 (S.D. Ga. Nov. 3, 2014).

In this case, the ALJ acknowledged Plaintiff's use of a cane and discussed whether it is medically necessary (Tr. 16–18). The ALJ then affirmatively rejected Plaintiff's need for a cane and gave reasons for doing so based on substantial evidence. For example, the ALJ stated that "while many notes showed the claimant used a cane, notes have also showed he did not; more recent notes even showed his knees were stable with no redness, heat swelling, or effusion" (Tr. 17). The ALJ was accurate in his observation that there are inconsistencies in the record about Plaintiff's use of a cane. Although Plaintiff frequently used a cane (*See, e.g.*, Tr. 34–35, 223, 479, 547), more recent records show that Plaintiff was ambulatory with minimal assistance (Tr. 547, 549). As the ALJ noted, a July

2018 examination by Dr. Mont revealed that Plaintiff had no swelling or edema, had 5/5 strength, and ambulated normally (Tr. 18, 513).  Dr. Mont also observed Plaintiff walking one city block without an assistive device (*Id.*).  Hospital records from September 2018 reveal that Plaintiff was ambulatory, had a normal range of motion, and only had mild tenderness in his knee (Tr. 266–67, 280).  Records from January 2019, after Plaintiff's second knee surgery, show that Plaintiff's gait was non antalgic (Tr. 549).

Thus, substantial evidence supports the ALJ's determination that a hand-held assistive device was not medically necessary.  As a result, the ALJ was not required to include the use of a cane in Plaintiff's RFC.

### B.    Subjective Complaints

Next, Plaintiff argues that the ALJ improperly evaluated his subjective complaints of pain (Doc. 28, p. 22).  In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.  20 C.F.R. § 416.929(a).  Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.  The standard

8

requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).[3]

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 416.929(c)(2). "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 416.929(c)(3). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

---

[3] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the Regulations do not use this term. SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). This change "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.*

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 15). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).

Here, the Court finds that it is. In evaluating Plaintiff's subjective complaints, the ALJ explained that Plaintiff's allegations were not supported by his treatment records (Tr. 15–17). The ALJ explained that Plaintiff's alleged onset date coincided with a left knee procedure, but by the end of July 2018, Plaintiff had full strength and ambulated normally without an assistive device (Tr. 15–16, 212–20, 513). Plaintiff underwent a second procedure for his knee in December 2018, but on subsequent examinations, Plaintiff's knee was stable (Tr. 16, 355–56, 541–45). Plaintiff also had a full range of motion without crepitus, full strength, normal coordination, normal sensation, and normal reflex. (Tr. 17, 481, 547, 549, 718). More recent notes show that Plaintiff's knee was stable with no redness, heat, swelling, or effusion (Tr. 549, 718). The ALJ also considered Plaintiff's own reports of daily activities, Plaintiff's failure to pursue physical therapy, and Plaintiff's failure to take prescribed medications (Tr. 17).

Plaintiff argues that the ALJ's "heavy reliance" on Plaintiff's daily activities to discredit Plaintiff's testimony was inappropriate, as courts in the Eleventh Circuit recognize that "participation in everyday activities of short duration, such as housework or fishing, [should not disqualify] a claimant from disability." (Doc. 28, p. 23 (quoting *Varner v. Astrue*, No. 3:09-CV-1026-J-TEM, 2011 WL 1196422, at \*6 (M.D. Fla. Mar. 29, 2011)) (alterations in original)).   Plaintiff correctly points out that, to support his conclusion, the ALJ cites to abilities that—on their own—could not be considered substantial evidence to support the ALJ's subjective complaint determination.   Simply put, Plaintiff's ability to watch television, manage his finances, and socialize via telephone are not inconsistent with Plaintiff's reports of knee, back, and shoulder pain.

Plaintiff further argues that the ALJ erred in considering Plaintiff's failure to pursue physical therapy, because Plaintiff could not locate a physical therapist who would accept his insurance, and inability to pay constitutes good cause for not following prescribed treatment under SSR 18-3p.  *See* SSR 18-3p, 2018 WL 4945641, at \*5 (Oct. 2, 2018).  While this is one of the listed reasons for Plaintiff's failure to attend physical therapy, it is not the only reason (Tr. 656).  Plaintiff also stated that he did not want to attend physical therapy until his pain resolved, but those same treatment notes indicate that his pain was adequately controlled by his Meloxitan prescription (Tr. 656–57).  The ALJ acknowledged this inconsistency in his consideration of Plaintiff's subjective complaints (Tr. 16).  This was not improper.[4]

---

[4] Plaintiff suggests that he stated that his pain was under control because he did not want to take opioids.  The mere possibility that there is an alternative explanation for this statement is insufficient for this Court to conclude that the ALJ erred.  This Court is not

Finally, Plaintiff argues that the ALJ erred in considering Plaintiff's failure to take his medications, as treatment notes indicate that Plaintiff refrained from taking oxycodone out of concerns for developing an opioid addiction (Tr. 656), which also constitutes good cause for not following prescribed treatment under SSR 18-3p.  *See* 2018 WL 4945641, at *6.  It does not appear that the ALJ relied on Plaintiff's failure to take opioids, however. Indeed, the ALJ's opinion cites to treatment records relating to Plaintiff's failure to consistently take anti-inflammatories after his first knee surgery (Tr. 16, 513).[5] Accordingly, the ALJ's consideration of Plaintiff's failure to take prescribed medications in making his determination was not erroneous.

In summary, the ALJ based his determination of Plaintiff's subjective complaints on Plaintiff's treatment records, which constitutes substantial evidence in support of his determination.  The ALJ did not err in identifying Plaintiff's failure to seek physical therapy and take prescribed medications, as those factors qualify as additional evidence in support of the ALJ's determination.  Accordingly, because substantial evidence supports the ALJ's determination, any reliance on Plaintiff's daily activities was harmless error. *See Brown v. Comm'r of Soc. Sec.*, 459 F. App'x 845, 846 (11th Cir. 2012) ("Finally, although the ALJ erroneously found that Brown had not sought treatment for her mental health issues over an eighteen-year period prior to 2007, this error was harmless because the

---

permitted to reweigh the evidence or substitute its judgment for that of the ALJ.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

[5] Plaintiff also suggests that the only other medications he failed to consistently take were unrelated to his knee, shoulder, and back pain (Tr. 264, 269, 615, 645). As set forth above, however, Plaintiff also failed to take anti-inflammatories following his knee surgery (Tr. 513).

remaining evidence provided a substantial basis for the ALJ's conclusion."); *Wright*, 2014 WL 5591058, at *7 (misstatements in credibility determination were harmless where the ALJ otherwise had a sufficient basis for the credibility determination even absent the misstatements).

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective complaints. *Foote*, 67 F.3d at 1561–62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[6]

### C.    Borderline Age Category

Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's borderline age category. Plaintiff was born on October 16, 1964, and he was fifty-three on the date the application was filed (Tr. 57). On July 9, 2019, when the evidentiary

---

[6] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239.

hearing was held, Plaintiff had reached the age of fifty-four years and about nine months. On October 1, 2019, the ALJ issued his written decision denying Plaintiff benefits (Tr. 11–21).  At the time of the ALJ's decision, Plaintiff was fifty-four years and just over eleven months—only twelve days shy of his fifty-fifth birthday (Tr. 57).

Notably, Plaintiff does not contend that the ALJ failed to consider Plaintiff's borderline age category, but instead seems to suggest that the ALJ's reasons for deciding not to apply the higher category are not supported by substantial evidence (Doc. 28, pp. 33–35).  In response, Defendant states that the mere fact that Plaintiff is nearing an older age category does not automatically result in Plaintiff being placed in the older age category.  In other words, Defendant argues that the denial of benefits should be affirmed because Plaintiff failed to meet his burden or proffer evidence that his ability to adapt was less than the level established under the Grids for persons of his age who are capable of his RFC (*Id.*, p. 37).

When the disability evaluation process reaches step five, an ALJ must consider a claimant's RFC along with vocational factors, such as age, in determining whether the claimant is able to do other work.  20 C.F.R. § 416.920(a)(4)(v).  In applying the grid rules, which were promulgated to improve the uniformity and efficiency of step five determinations, a claimant's age is considered by reference to one of three categories. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *see* 20 C.F.R. § 416.963. The following relevant age categories are set forth by the regulations:

1) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

14

> 2) Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).

20 C.F.R. § 416.963(d) & (e).

> The regulations provide for the following procedure in a "borderline situation":

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b).  Accordingly, such a "borderline situation" exists where (1) the claimant is "within a few days to a few months" of the next older age category; and (2) applying the grid rules for that older age category would result in a determination that the claimant is disabled.  *Id.*  The ALJ must "consider" whether the next older age category should be used when those two conditions are present.  *Id.*

As to the first condition, Plaintiff was clearly within a few days to a few months of the next age category.  *See, e.g., Dubyna v. Colvin*, No. 8:13–CV–1966–T–TGW, 2014 WL 4660363, at *8 (M.D. Fla. Sept. 17, 2014) ("Although there is no bright line rule for how many months is borderline, the predominant view is that six months from the next age category is the outer limit.").  As for the second condition, it appears to be undisputed by the parties that when Plaintiff turned 55, he would have been found disabled based on grid rule 202.06.  (Doc. 28, pp. 33–38); *see* 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.06. As such, Plaintiff is properly considered to be in a "borderline situation."

15

There is no requirement, however, to automatically apply the higher age category when a claimant falls into the borderline age situation. *See* Program Operations Manual System ("POMS")[7] DI 25015.006 ("Do not use the higher age category automatically in a borderline situation."). Instead, the ALJ is required to "consider whether to use the older age category after evaluating the overall impact of all the factors of [a claimant's] case." 20 C.F.R. § 416.963(b). That is what the ALJ did in this case.

The ALJ found Plaintiff was an individual "closely approaching advanced age" at step five of the sequential evaluation process and relied on the VE's opinion that there are jobs that exist in significant numbers that Plaintiff can perform, considering his "age, education, work experience, and residual functional capacity" (Tr. 19–20). The ALJ also expressly discussed Plaintiff's borderline situation, stating that he was "mindful that the claimant will turn age 55 shortly after the issuance of this decision," but that he did not find there to be "additional adverse factors which would warrant consideration of a borderline age situation and non-mechanical application of the medical-vocational guidelines." (Tr. 20).

As such, the ALJ relied upon the testimony of the VE and did not mechanistically or exclusively rely on the guidelines. *See Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635–36 (11th Cir. 2007) (per curiam) (concluding that "the ALJ did not rely exclusively

---

[7] The Social Security agency promulgated the POMS as "publicly available operating instructions for processing Social Security claims," but these administrative interpretations "are not products of formal rulemaking." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). As such, the Eleventh Circuit has stated that "POMS can be persuasive" but "does not have the force of law." *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011) (per curiam).

on the grids" where the ALJ relied on the testimony of a VE); *Dubyna*, 2014 WL 4660363, at *8 (finding no error where Appeals Council based its determination upon the testimony of a VE, and "[t]herefore, there was neither an improper reliance on the guidelines nor a mechanical application of the age category"); *Hayes v. Astrue*, No. 3:07-CV-137, 2009 WL 481473, at *2-3 (M.D. Ga. Feb. 23, 2009) (finding no error where "the ALJ relied upon the testimony of a vocational expert, and did not mechanically apply the grids").

Moreover, to justify the use of the older age category, there must be a proffer of additional vocational adversities that create a lesser ability to adapt. *See Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 847 (11th Cir. 2017). Here Plaintiff failed to suggest any additional adversities that would require application of the older age category. *Hutchinson v. Bowen*, 787 F.2d 1461, 1465 (11th Cir. 1986) (claimant has burden of producing substantial evidence of lesser ability to adapt than chronological age); *Reeves v. Heckler*, 734 F.2d 519, 525-26 (11th Cir. 1984) (same). Plaintiff failed to make any such proffer.

For these reasons, the ALJ properly considered whether to use the older age category after evaluating the overall impact of all the factors of Plaintiff's case, applied the correct legal standards, and made findings supported by substantial evidence.

## V.   Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

    2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

    **ORDERED** in Tampa, Florida, on this 2nd day of March 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE